# Irwin's Estate.

*Practice, O. C.—Decree—Filing exceptions nunc pro tunc—Fraud.* ·
Where a decree nisi of the orphans' court has become final under the
rule, the court may permit exceptions to the adjudication to be filed
nunc pro tunc, if application is made therefor by the parties in interest
promptly within the term, and it appears that the claimants are non-
residents, that they were without actual knowledge of the proceedings,
and in their application allege that the administratrix had appropriated
all of the personal estate, and had secured a decree in her favor for an
additional amount chargeable on the real estate, in payment of an
alleged claim for nursing and other services for six years, which nurs-
ing and services had never in fact been performed.

Argued May 11, 1909.  Appeal, No. 42, Jan. T., 1909, by
Isaac McConnell Irwin, from decree of O. C. Fayette Co.,
Dec. T., 1908, No. 23, refusing to allow exceptions to be
filed nunc pro tunc in Estate of Elizabeth Irwin, deceased.
Before MITCHELL, C. J., FELL, BROWN, POTTER and ELKIN, JJ.
Reversed.

Petition for leave to file exceptions nunc pro tunc.  Before
WORK, P. J.
The opinion of the Supreme Court states the case.

*Error assigned* was decree dismissing the petition.

*Alfred E. Jones*, for appellants.—The orphans' court has
control over the accounts confirmed by it during the term at
which they are filed: Metz's App., 11 S. & R. 203; George's
App., 12 Pa. 260; Mylin's App., 7 Watts, 64; White's Est.,
1 Pa. Dist. Rep. 508; Walker's Est., 3 Rawle, 243; Bishop's
App., 26 Pa. 470.

This act provides that in case of error, the orphans' court
"shall grant a rehearing" and provides further also that it
shall "give such relief as equity and justice may require:"
Kinter's App., 62 Pa. 318; Meckel's App., 112 Pa. 554.

It has been held that the orphans' court has general eq-

uitable powers that enable it to grant relief according to the facts and circumstances of particular cases: Johnson's App., 114 Pa. 132; Milne's App., 99 Pa. 483; George's App., 12 Pa. 260; Young's App., 99 Pa. 74; Neisly's App., 8 Pa. 457.

*John M. Core*, for appellee.—All our cases agree that, upon a question of the construction or application of its own rules, a court can be reversed only for manifest and material error: Bair v. Hubartt, 139 Pa. 96; Kunkle's Est., 21 Pa. Superior Ct. 200; Carpet Co. v. Latimer, 165 Pa. 617; Livingston v. Kerbaugh, 30 Pa. Superior Ct. 534; Mylin's Est., 7 Watts, 64; Coleman v. Nantz, 63 Pa. 178; Wickersham v. Russell, 51 Pa. 71; Dailey v. Green, 15 Pa. 118; Webster v. Coal & Coke Co., 201 Pa. 278.

It is true that under certain circumstances the lower court may, in their discretion, allow exceptions to be filed nunc pro tunc: Mylin's App., 7 Watts, 64.

The notice given, agreeably to the rules of the court, and more especially by direction of the acts of assembly, must have the same effect as actual notice, and bind equally: Priestley's App., 127 Pa. 420; Sheets's Est., 215 Pa. 164; Yocum v. Commercial Nat. Bank, 195 Pa. 411.

A bill of review can be granted for error of law apparent on the face of the record, or for new matter which has arisen since the decree: Priestley's App., 127 Pa. 420; Bailey's Est., 208 Pa. 594; Moore's App., 10 Pa. 435; Com. v. Moltz, 10 Pa. 527.

The whole matter was addressed to the discretion of the lower court and its decision thereon is not the subject to review: Bishop's App., 26 Pa. 470; Priestley's App., 127 Pa. 420; Johnson v. Ins. Co., 218 Pa. 423.

OPINION BY MR. JUSTICE BROWN, June 22, 1909:

Elizabeth Irwin, a resident of the borough of Uniontown, Fayette county, died intestate February 9, 1908, leaving to survive her as her next of kin a sister, Margaret Blackburn, a resident of said county, and nephews and nieces, sons and daughters of a deceased brother and sister, all of whom were

nonresidents of the county at the time of their aunt's death. On March 16, 1908, Margaret Blackburn renounced her right to administer on her sister's estate and, upon her request, letters of administration were granted to her daughter, Rena B. Wycoff, the appellee. On March 25, 1908, the personal estate of the deceased was appraised at $2,991.94 and an inventory of the same was duly filed. On April 23, 1908— thirty-eight days after letters were granted and twenty-nine days after the appraisement was taken—the administratrix filed her first and final account, in which she charged herself with $3,019.44, and, after taking credits for funeral expenses, the payment of a note held by Margaret Blackburn, commissions, attorney fee, taxes, etc., amounting to $722.35, she appropriated the entire balance to herself on account of an alleged claim for nursing and taking care of the decedent for six years at the rate of $500 per year. The credit which she claimed was $3,000, and the balance appearing to be still due her is $702.91. This account was confirmed nisi on June 3, 1908, and no exceptions having been filed within ten days, it became, under the rule of court, absolutely confirmed on June 13, 1908. All of this occurred in less than ninety days from the time letters of administration were taken out by the appellee, and, if the relief which the court below denied to the appellants is not granted to them, she, as an alleged creditor of the estate, who ought not, under the circumstances, to have asked for letters, will be paid $2,297.09 out of the personal estate and have an adjudicated balance due her of $702.91, to be paid out of the real estate, on a claim without any proof whatever in support of it, though it belongs to a class of which it was most properly said by the present chief justice in Carpenter v. Hays, 153 Pa. 432: "Claims against a dead man's estate, which might have been made against himself, while living, are always subjects of just suspicion, and our books from Graham v. Graham, 34 Pa. 475, to Miller's Est., 136 Pa. 239 (249), are full of expressions by this court of the necessity of strict requirement of proof and the firm control of juries in such cases."

As soon as the appellants—nonresidents of the county, who

had no notice of the filing or confirmation of the account—learned that the appellee had appropriated to herself nearly all of the personal estate of the deceased, and had obtained an adjudication of the balance still due her, to be paid out of the real estate, they took steps to frustrate what they not unnaturally regard as an attempted fraud upon them. On June 29, 1908, during the term at which the account was confirmed and only sixteen days from its absolute confirmation, they presented their petition to the court, setting forth the credit taken by the accountant for having paid to herself the sum stated for nursing and taking care of the decedent for six years, at the rate of $500 per year, and asking, as they had had no actual notice that the account had been filed, leave to file exceptions to it nunc pro tunc. On this petition a rule was granted to show cause why exceptions should not be filed, and the only answer made by the appellee was that the usual course of procedure taken by all the estates of this commonwealth had been followed in the settlement of this, and that, as the confirmation of the account had become absolute under a rule of the orphans' court, the rule ought to be discharged. Subsequently, on September 3, 1908, a supplemental petition was presented to the court and directed to be filed, with leave to the accountant to file an answer thereto within fifteen days. In this petition it was set forth that none of the next of kin of the decedent, except the mother of the administratrix, were residents of Fayette county; that no actual notice of the filing of the account had been given to any of them by the administratrix, or from any other source, until the account, under the rule of court, was confirmed absolutely; that the said claim of $3,000, made by the appellee for nursing and attendance upon the decedent, had no merit as a valid claim against her estate; that on the claimant's own request and for her accommodation, more than fifteen years before, she had been allowed to make her home with decedent, in the borough of Uniontown, upon condition, that she should pay a small weekly allowance to the decedent for furnishing her board and room; that the privileges extended to the appellee by the decedent were continued until

the latter's death; that no contract or understanding, express or implied, ever existed between the claimant and decedent by which the former was to receive $10.00 per week, or any other amount, for any length of time for the alleged services; that the services for which the appellee makes claim were never rendered, for the reason that decedent needed no such services; that, with the exception of possibly a few weeks, at most, during the time for which the claim was made, the decedent was always in a physical condition to attend to her wants and duties, to take care of her house and to do her own cooking, which included that for the appellee as well; that she had no physical ailments which ever required the care of a physician, and that during the six years previous to her death she spent a considerable portion of her time— possibly one-fourth—away from her home in Uniontown, unaccompanied by the claimant. This supplemental petition was presented to the court upon notice to the attorney for the appellee. To it no answer was made. Subsequently, on November 16, 1908, the rule granted to allow exceptions to be filed nunc pro tunc was discharged, the court refusing to allow the original petition to be amended by adding thereto and incorporating in it the facts set forth in the supplemental petition. The only reason given for refusing to allow the exceptions to be filed nunc pro tunc was that the account had been confirmed under a rule of court which provides that after confirmation nisi the confirmation shall become absolute without further order, unless exceptions are filed within ten days, and that proper cause had not been shown for setting the confirmation aside.

By the Act of June 16, 1836, P. L. 784, the orphans' courts of the commonwealth have power and authority to establish such rules regulating practice as in their discretion they shall judge necessary or proper, and the rule of the court below, upon which it relied in holding that it could not allow the account of the appellee to be subjected to exceptions, is one which, in effect, is in general force throughout the state; but no accountant ought ever to be permitted to use such a rule as a means for the perpetration of a fraud upon distributees,

if they promptly invoke the power of the court to save them. That the facts as set forth in the unanswered supplemental petition, which the court made part of the record in directing it to be filed, with leave to answer, show fraud on the part of the appellee, is not to be questioned, and she may not shield herself behind a rule of court under which there was an absolute confirmation of her account, hurriedly filed for a manifest purpose. If she had brought suit upon her alleged claim, she could not have been a witness in support of it, and, as one of just suspicion, it could have been established only by competent and sufficient evidence under the court's firm control of a jury. This she undoubtedly knew, and undertook to obtain for herself, as a creditor of the estate, a judgment against it by default, though she, as its representative, of all others, should have protected it against such a judgment. The face of the account is proof of her faithlessness.

That the court below could have allowed the exceptions to be filed is not an open question. Counsel for appellee admit that this power may, in a court's discretion, be exercised under certain circumstances. In Mylin's Estate, 7 Watts, 64, this court held that the lower court had committed no error in enforcing its own rule as to the time within which exceptions were required to be filed, because it was not alleged that the appellant had received no notice of the filing of the auditor's report nor that any reason had been assigned by him for omitting to file his exceptions in due time; but at the same time it was said: "The legislature has made it necessary to give notice to the heirs and legatees, in a manner prescribed, and which, in almost every instance, has the desired effect. But if a fair notice has not been received (which in some instances may be the case), the orphans' court may, in their discretion, afford an adequate relief, by permitting the party aggrieved to file exceptions, nunc pro tunc." In the earlier case of Metz's Appeal, 11 S. & R. 203, in which the orphans' court was reversed for holding that after having settled an account it had no power to open it, it was held, through TILGHMAN, C. J.: "When the orphans' court struck these charges out of the account of the administrators, they

were not present, and consequently, had no opportunity of supporting them. They petitioned for a rehearing, in a few days, and during the same session of the court; and it really does appear to me, that they might have been heard without any breach of law; for I cannot think, that the hands of the court are tied, from opening an account, the moment after they have closed it. For what period of time their power to open an account continues, I mean not now to give an opinion; it is enough for the present occasion, to say, that I am satisfied, they have power to open and re-examine it at any time during the same term at which it was settled."

The confirmation of the account of the appellee as administratrix was undoubtedly a decree of the court, and the petition to file exceptions to the account nunc pro tunc, presented during the term at which it was confirmed, was but an application to open the decree and grant a hearing to parties who had never been heard. "Final decrees of the orphans' court may be corrected in various forms, depending on the time and the grounds of the application. 1. On mere motion, as to clerical errors, and matters that are necessary to make the decree accord with the form that is usual for the kind of case, and that, as the case appeared and is remembered by the court, would have been inserted or omitted if it had been suggested to the court: 12 Ser. & R. 171; 1 Hoffm. Ch. P. 559; 7 Ves. 292, 293; 5 Mad. 121; Moseley, 255; Dick. 59. 2. On petition for a rehearing, setting forth the grounds of the application, and verified by oath or affirmation. This applies in cases of decrees by default, and even of decrees on hearing, if applied for during the term, or perhaps after that, if nothing has been done under the decree to prevent it: 11 Ser. & R. 206; 1 Hoffm. Ch. P. 561, 562; 3 Mar. 698; Dick. 109, 145; 1 Dan. C. P. 576, 579; Id. 1207; 7 Paige, 512; Id. 180:" Bishop's Appeal, 26 Pa. 470.

With the undoubted power of the court below, in its discretion, to suspend its own rule and permit the exceptions to be filed, its failure to exercise that power, when promptly invoked by the appellants, was so manifestly wrong, in view of the unanswered averments in the supplemental petition,

that nothing more need be said in directing that the prayer of the appellants be granted.

The decree of the court below is reversed at the cost of the appellee, and it is ordered that leave be granted to the appellants to file exceptions to the account of the appellee nunc pro tunc, and that the court proceed to pass upon them.